We'll hear argument next in U.S. Ethernet against Texas Instruments 15-1510. The Texas Instruments case, if this court were to reverse the summary judgment order in California, or if the court were to find the patents valid as a matter of law, we believe that the only live issue in this case would be the issue of willful infringement. But just, I think, to clear out underbrush, if, on the other hand, in the case we just heard argument in, we affirm the summary judgment of invalidity, the Texas case is over as well? I believe the collateral estoppel doctrine, which we can talk to, may not necessarily compel that result. Even after we've decided it, as opposed to another district court? The reason I would say that, Your Honor, is simply that Texas Instruments has waived its appeal. So there are no issues pending that Texas Instruments could complain about in the Texas court. I'm not sure I follow that. If we affirm Judge Wilkins' finding of invalidity, you think you can still get damages in the Texas case? Well, we believe that the judgment... On an invalid patent. The judgment, you think the judgment is sufficiently final? Correct. That's right, Your Honor. Under Fifth Circuit. Don't you have some problems with some of our earlier cases, like E-Plus and Fresenius and all that kind of stuff? The threshold question on the collateral estoppel, Your Honor, is, is this a regional question such that the Fifth Circuit law would apply, or is it a substantive question of patent? Why is it a collateral estoppel issue, though? If the case is still pending, and the patent is invalidated, then there's no valid patent anymore. It's not really even a question of collateral estoppel to another district court decision. We've declared the patent invalid. Even if he'd won on appeal below, and only appealed damages, I think under these other cases, he would get reversed in remand and said he can't have damages for an invalid patent. Well, if TI had not waived its appellate rights, I think Your Honor would be exactly right. But they have waived their appellate rights. So what's the waiver argument? They had a cross appeal and dropped it. So the judgment of the Texas court, the first final judgment, they appealed various issues, and then they dropped their appeal of that judgment. So if it goes back down, assuming this court doesn't find the patents valid as a matter of law, if it does go back down to Texas, we're not sure that that result will be compelled. I guess you did, I think, want to talk about the willfulness question. As you know, what willfulness means and what role it plays in enhancement is currently pending in the Supreme Court. Some of the dispute in that pair of cases had to do or has to do with at what point in particular, at the time of the infringement or only later in preparing a defense, did the defendant come up with the, by assumption, reasonable defenses. On that question, that timing question, what does the record in this case say? Our understanding is that the Texas Instruments knew about the patent. They, in fact, prosecuted a similar patent and cited the 872 patent in that prosecution. So they knew about the patent. The two prior court cases, one was the Realtek decision where a very similar FIFO was rejected on summary judgment by Judge Walker out in San Francisco and that went to the jury and resulted in a $70 million settlement under the same exact patent. The fact that a very similar FIFO was rejected as prior art in that original Northern District of California case we think compels the result that it was not an objective reliance on the sonic reference. But let me try to clarify, maybe I'm thinking too much in the halo terms. Let's assume for purposes of this question that the only invalidity argument is the one that Judge Wilkin agreed with. Is there record material in this case that says T.I. had in mind at the time of the alleged infringement that Judge Wilkin's theory of invalidity? There's nothing in this record to support that T.I. had an opinion of counsel or anything else at that point in time, at the time the lawsuit was filed. And I guess that would be, you know, if we're looking at the subjective prong versus the objective prong, I think that would be our understanding of the record. We recognize that the Supreme Court may or may not change the test and we would respectfully request that the court hold its decision in this case until the Supreme Court rules and then if there is a change, reverse and remand and let the district court decide the issue on a more developed record. I do want to point out on the anticipation front that there are a few things in this record given that it went through two trials that weren't necessarily in the ACER record that we believe further compel the result that the patents are valid as a matter of law over the sonic reference. First, the expert for Texas Instruments in this case testified at length at trial that he understood reading the patent, reading the claim language, that the claim language required the ability to store the data of the frame. So he understood that his testimony at trial was that it had to store a maximum size Ethernet frame, a 1,500 byte Ethernet frame. We disagreed. The jury came back on the infringement side in our favor. But the point is that he understood the claim language to require the storage of an Ethernet frame. That record difference between the two cases, the California case and this case, would not make a difference if we affirm Judge Wilkins. I would leave that to your honor. I'm asking, I guess, is there something about the law of issue preclusion that would allow us to say, even though you had a full and fair opportunity in the ACER case and you lost and that's affirmed that the patent is invalid, nevertheless, there's no issue preclusion because you had, you know, you put on a better case, including with help from the other side's witness in the Texas case. I'm not aware of such law. I'm not aware of such law either, although I think this is somewhat unique in our view of the case law. We have two different district courts, actually three different district courts, reaching two different results. Two went our way. One did not. Under the two cases that are pending, we're looking at one going our way, one that did not. The record in the Texas Instruments case was cited to Judge Wilkins in the summary judgment briefing, although she didn't consider it in her opinion. She was advised of the fact both the defense and us, the plaintiff, cited various pieces of the Texas Instruments record to the court. Whether that played a part in her decision, it didn't appear in her order. That's all we know. But importantly, there were three other experts in that case for the defense who reached the same conclusion in the Texas Instruments case. It was Dr. August, Dr. Dickens, Dr. Bennett that cited in her brief. All three of these defense experts agreed with us that the claim language required the storage, the transmit data buffer storage element to be met. And again, I don't mean to belabor the point, but 10 out of 11 PECIDAs in this record agree with our reading of the claim language and the transmit data buffer element. Importantly, the designer of the SONIC, who was a sponsored witness by the defense, Dr. Wesley Lee, came and testified. And he admitted a couple of things that we think are critical. First, he admitted that SONIC does not contain a transmit data buffer. And that's straight out of the summary of invention. If the shoe were on the other foot, if we were before you all saying that the infringing product doesn't have to contain a transmit data buffer, you would properly be grilling me about the summary of invention, saying the summary of invention says transmit data buffer, where in the SONIC is a transmit data buffer? And properly so. But the shoes on the foot here, Dr. Wesley Lee admits expressly the SONIC cannot store the 64 bytes, doesn't contain a transmit data buffer, and importantly, he admitted that the way the SONIC was described in the specification of the patent was accurate. He agreed. So whether the data sheet was before the patent examiner, we don't think is material. The only material issue was the SONIC was a FIFO, that's described in the specification. A FIFO unloads data and doesn't store data locally. But this is really, I mean, I guess as I'm hearing it, a kind of merits argument from the earlier case. That's correct. It's supplement. I believe that supplements. And your honors do have a plenary review of the validity issue. And we believe we should have been granted judgment as a matter of law on the validity issue in Texas as well. And if that had been granted, we wouldn't have been here. The only, the last thing I'll say is this court has decided in several cases that the question of whether a judgment is final is a procedural question dictated by the law of the regional circuit, in this case, the Fifth Circuit. Right. So on that question, put aside, let's assume that in the ACER case, we have actually affirmed Judge Wilken. Is there Fifth Circuit law that says, nevertheless, that is not issue preclusive on the Texas Instrument case? I thought the cases that you discussed were all cases. There's a Fifth Circuit case that says, excuse me, another district judgment might not have preclusive effect. Yeah. Fair question. An appellate court judgment? Our view is, if we had just filed the Texas Instruments case, and this court came down and said, no, the patents are invalid, unquestionably, the issue preclusion would apply. The distinction here is that the Texas court reached a final judgment, issued a final judgment in our favor prior to the issue. Is this different from Mendenhall, or you just think Mendenhall doesn't govern because it's Fifth Circuit or something? It's different to the effect that this court hasn't ruled at the time, hadn't issued a ruling at the time that Judge Schneider in Texas issued his collateral estoppel opinion. So we think that was the error at the time the collateral estoppel opinion was issued by the judge. What happens after that, that's really not, that wasn't the subject of our briefing. If I may reserve the remaining time. Please. Thank you. Mr. Hassel? Hassel. Thank you. It pleased the court. If this court affirms the Acer judgment, I think the facts then fall squarely within Mendenhall and Sovereign Software. In Mendenhall, with respect to the Barbara Greene judgment, there was a judgment finding validity which was on appeal when this court decided the Cedar Rapids case, and the same day it decided Cedar Rapids and held that patent invalid, it then, in the Mendenhall case, applied collateral estoppel to the Barbara Greene judgment. So in this case, I think we are squarely within Sovereign Software, Mendenhall, and the cases which have said, as long as a case is still proceeding, collateral estoppel can be raised. I think footnote five in Mendenhall covers this, where it says that the collateral estoppel rose on the district court's judgment, and you would be in the same situation as you were in Mendenhall, where you do not now face the issue, which you didn't face in Mendenhall and you would not face now, of what do you do about predicating collateral estoppel on a judgment which might be modified. And as you said in footnote five, in Mendenhall, you don't have that issue, and if you affirm the Acer case, likewise, you would not have that issue here. Is the question of finality a question governed by Federal Circuit law or Fifth Circuit law? I think, as this court said in Pharmacia and in Sovereign, there is a dividing line between when the court applies its law and when you apply regional circuit law. And as Pharmacia said in footnote four, and as you said in Sovereign, you look to regional circuit law for the general principles of applying collateral estoppel. Was the issue identical? Was it necessary to the judgment? Was it actually litigated, and are there special circumstances? Once you find that type of judgment, the court has said that the application then of Blondertongue, and I think this is the import of Mendenhall and Sovereign in those cases, then becomes a question for this court. The test that you would look to the Fifth Circuit for here would be, is the Acer judgment sufficiently final? Did it actually litigate the issue? Is the issue identical? And are there special circumstances which USEI has not raised here? That would say, okay, the Acer judgment is one on which you can predicate collateral estoppel. Now, you look to your law, Mendenhall, Fresenius is applying collateral estoppel fairly late in the process of a district court litigation. But I think your cases draw the dividing line, and I think we're squarely within the application of Blondertongue, given the Acer judgment meets the requirements for applying collateral estoppel. If you were to reverse Acer, I think the action here would be to vacate the judgment and remand. For this reason, there were pending JMALs which have issues which we could not appeal by way of cross-appeal, because it would not have expanded the relief we would get. But such issues as marking... Right, but you might not have been able to cross-appeal them, but you could have argued about them as alternative grounds in defense of the judgment. It would not have been a defense on the validity issue, it was a damage issue, marking, which would be relevant if we go back. Anyway, that's my position as to what the court should do. And of course, we don't know if you were to reverse Acer on what grounds you would reverse Acer. There was also a new trial motion pending before the court, but our view is that you should vacate and remand if you were to reverse Acer for the court to take whatever steps are necessary in light of what this court would do and to reach the issues. Can you just clarify for me, what's the status of the 094 patent in this case? On the first day of the infringement trial, based on the judicial estoppel ruling, they withdrew the 874 patent and they dropped the 094 patent. They just withdrew it and it didn't go to the jury. So is that patent out of this case regardless? Yes. Okay. And can you answer the question that I asked your colleague about what the record says about the timing of TI's generation of the defense, the invalidity theory that in the Acer case, Judge Wilkin accepted? Was it at the time of infringement or later or what? It was later. I don't believe the precise timing of that was really developed in the record given what the state of the case law was, but I believe it's accurate to say that there was no evidence that at the time of first infringement they had in mind the national semiconductor part. Now on the claim construction issue, and I think Mr. Stevens adequately covered most of the points, but I would like to make one point about our record which is different. In the opening brief here, USCI relied on the means for early transmission claim term to support its notion that the buffer memory had to be a minimum size Ethernet frame. In their reply brief, they now rely on the buffer memory for the storage of data of frames for transmission to have this retain or retransmit. To me, retain or retransmit or successfully transmitting, which is the same thing, they are trying to impress into the claim term in order to support the notion that it's got to be a minimum Ethernet frame. In our record, on the briefing on the summary judgment motion, which led to the claim construction, buffer memory is a memory for the temporary storage of data. USCI specifically told that court, the district court in Texas, that retain and transmit was not a requirement of the claim. That is at appendix 1079. They were talking at 1079 about the district court's claim construction in the Acer case. They say, this is at appendix 1079, in that case, the court rejected the idea that the buffer memory was required to retain a frame of data after the frame had been transmitted in order to enable retransmission. They then, I'm going to elipse some of it, it said, in short, the California court found that the ability to retain a frame of data for retransmission is not a required element of the claims of the 872 and 094. This is supported by the specification, which states that this capability may be a benefit of the type of buffer claimed in the patents, but it is not a requirement. The entire thrust of the argument they have made to this court is that because successfully transmitting or retaining and retransmitting is a requirement of the claim, SONIC cannot anticipate. They disclaimed that to the court below. On the issue of whether these claims are limited to Ethernet, I think if we look at the patent, particularly in the overview section of 3-5, there is no reference in describing the overview of the invention to Ethernet. The transmission medium 42 in figure 2 is described generically as a network transmission medium. This claim was drafted to cover not only Ethernet, but other forms of transmission mediums which transmitted information over a network medium. The proof of that is that the examiner saw it the same way. If you look at the Feroosman reference, it was a fiber optic reference. If you look at the specification in figure 2 in that patent, remembering that a byte is 8 bits, you will come to the conclusion that the examiner believed that the buffer memory in the claims was one that only had to store potentially on the order of 25 bytes of information if it was a fiber optic. USCI did not distinguish it on the basis of the size of the buffer memory. They distinguished Feroosman on other grounds. When we look at the claim, the claim simply says buffer memory. There is no dispute in this record that the SONIC reference has a buffer memory which meets the claim limitation. A memory for the temporary storage of data. The SONIC reference in the FIFO stores the data and then unloads it and transmits it. There is no dispute that it is a memory for the temporary storage of data. Nobody at trial disputed that. Thank you for your answer. Mr. Herman, fourth time. Thank you briefly, your honor. The first point would be any issue that TI is raising related to what happened in the Texas trial has obviously been waived. They have no cross-appeal pending. They can't complain about any of the orders. More importantly, they ignore the claim language. The claim language expressly requires storing data of frames for transmission. Do you want to say a word about what's at page 1079? That's the district court order? What I would say is probably your filing, isn't it? Yeah. So the retain and transmit, we're not saying that's part of the claim. We're saying the claim language expressly requires storing data of frames for transmission. The specification is very clear. Storage happens in transmit data buffers. Unloading happens in FIFOs. Unloading requires the FIFO to go back to the host to re-download the data. That's an advantage of the invention. But the invention, the claim limitation, is storing data frames. We're not talking the buffer memory element. We're not disputing the term. Is there any question that the sonic reference has the ability to store data? It does not store data in the patent sense. Well, not in what you're contending is the patent sense. I'm just asking whether it has the ability to store data. It does not store data locally. The memory... Does it not store at least 32 bytes? It has a 32 byte, but it's not stored. If there is a transmission error, you can't go within the sonic to get the data. It's not there. But when it says... I mean, it does have... Undisputedly, is this right? The feature that says it gets to specify how much of the data that's coming in the entrance. Should come in before we exit. Before we send any of it out. Correct. So, I mean, let's say it does 13 bytes. Those 13 bytes are going to be in that buffer, right? In sonic. It would be like a garden hose. They would go through the buffer. Yeah. Short storage, maybe, but better be storing. But the point is, once you start transmission, once the first byte leaves the sonic, if there is an error, it's not there for retransmission. That's gone. It's not stored. That's the critical distinction. The patent column one draws between the FIFO priority. But then the page 1079 becomes an issue for you, right? Where you said, doesn't have to be for claim one. Retained for retransmission. It's an advantage. It's not... Then the claim language. The claim language requires storing for transmission. And the point is, every procedure with the one exception who's read this patent comes to the same conclusion. That has to be part of the transmit data buffer element of the invention. It stores during transmission, doesn't it? No, it's unloaded. So it's not there anymore. It's the copy and paste versus cut and paste argument. None of the data is sort of parked there temporarily on its way? Well, it's parked in the sense that it's within the buffer. It's not parked in the sense that it could be retrieved from the device. The host has the memory where the data is. And that's the point of the invention. Thank you, Mr. Herman. Case is submitted.